Case No. 18-5302, Kaye Khine et al. Appellants v. United States Department of Homeland Security. Mr. Cleveland for the appellants, Mr. Glover for the appellee. May it please the Court, I am David Cleveland, Counsel for Kaye Khine and Catholic Charities. I'd like to reserve some minutes of my time for rebuttal. Ms. Kaye Khine made a very small, short request, just for four items. In response, the DHS found eight pages, they counted them out, and then put them aside and said, we are withholding these pages in full. We did not tell Kaye Khine what the pages were. And DHS found three more pages. They counted them out and put them together and said, we're sending these unknown pages, unknown to Kaye Khine, to another agency. They've already done the work. Why can't they tell Kaye Khine immediately just what the statute says? The statute says immediately tell the requester the reasons why you're not going to hand over the document. Mr. Cleveland, one of the issues that we have to satisfy ourselves about before reaching that is whether you've exhausted by taking an administrative appeal. And if you haven't, then all the merit of your argument is not really before us. So can you address the question about exhaustion? Yes, Your Honor. As a general principle, we want to exhaust administrative remedies before going to court. In this case, we are not seeking – the purpose of an administrative appeal is to get the documents. We're not seeking the documents right now. We're challenging the initial response. If we had filed an administrative appeal, we would have destroyed our standing to challenge the initial response. I'm not entirely sure why that's your position, because Catholic Charities presumably, if this had gone through and been resolved by an administrative appeal, but you thought you still had a meritorious claim on the failure to produce more documents and or information prior to the administrative appeal, could you have raised a policy or practice claim in that posture? You would still, as Catholic Charities, which repeatedly is in this position, its standing would not have been destroyed, or am I missing something? Well, yes and no, Your Honor. Catholic Charities is not seeking asylum. They're not going to make a request for assessments in the future. They're making a third-party request. But it is a FOIA requester withstanding to make a FOIA request, and it's done this more than once in the past. In fact, I gather that's where part of the sort of impetus of the frustration comes from, is that this is not the first time that we've had this experience and won't be the last. That's true, Your Honor. For purposes of class action, Civil Rule 23, Catholic Charities as an institution may have standing to represent a class. However, Catholic Charities made a third-party request. Can you explain that to me? This is where I'm very confused before we even know if we can have a policy or practice claim here. You opened by saying Kay Kine made a FOIA request. Indeed. And the FOIA request, it seems like nobody talks about it consistently. Sometimes it's talked about as your FOIA request, and Kay Kine has just sort of waved her privacy interest here. Sometimes it's talked about Kay Kine's FOIA request, and sometimes it's talked about, like in your complaint, as a joint request. So who is the FOIA requester, before we go any further? Kay Kine is the one who had the asylum interview. The assessment is about her. No, no, no, no, no. I get the documents are about her. Who is the FOIA requester in this case? Kay Kine is the requester. Okay, so Cleveland Charities, sorry, Catholic Charities. Catholic Charities, I apologize. Catholic Charities is not a FOIA requester. They're sort of her agent doing it for her. Indeed, Your Honor. Okay. The request is on page A20. Right. It's a little confusing what's going on in that request as to who the requester is. So Kay Kine is the FOIA requester, and you and Catholic Charities are simply acting as her agent. You are not independently seeking these documents. Correct, Your Honor. Correct. All right. Well, then how can you have a policy or practice claim? You have to file a FOIA request to be able to bring the lawsuit. And then make a policy or practice claim. You just told me you have not made a FOIA request in this case. That's true. Perhaps we could have, in the context of a civil, in a class action, Civil Rule 23, perhaps then we could make that claim. Perhaps Catholic Charities can represent the class. It's not clear to me that it would need to if it were to seek the records, but it's done neither. Well, Your Honor, the assessment is about Kay Kine. She wants to know what's the story. Catholic Charities can't make a request for somebody else's documents. Kay Kine wants... Sure you can. People do it all the time under FOIA. Well, okay. It might run into a privacy issue or exemptions or redactions. People request third party information all the time. But Kay Kine is making the request. She's the name plaintiff. The first eight causes of action are about what she wants to know. She wants to know if you have the assessment or not. It seems... I thought it was both. I thought... The way I understood the case, and I thought the way the district court understood the case, is that there's both a request by Kay Kine through you. I'm sorry, through Catholic Charities. And then there's also a request by Catholic Charities that's in the form of a pattern or practice claim, a policy or practice claim. But you're saying that's not right, that all we're dealing with is a request by Kay Kine. The complaint has, I think, nine causes of action. The ninth cause of action deals with policy and practice and class action allegations, and that's where Catholic Charities comes into the picture. Right. So when you say when they come into the picture, you mean come into the picture by being a requester? They're not exactly... Well, they're a third-party requester. What does third-party requester mean? Does that mean you're their agent? It sounds like from your complaint, you're their agent. You're doing it on her behalf. Indeed. Kay Kine says, mail my papers to somebody else. So we're the agent. Okay. And so you're... I'm sorry. Aye. So you are not making... I just want to be crystal clear. You are not making... Catholic Charities has not made its own FOIA request for these documents. Its own FOIA request. No, it hasn't. Okay. I'm sorry. Go ahead. And then as you understand, the ninth cause of action, which is the policy or practice claim, that's being made by Kay Kine, too. Yes. She wants to make that claim. That's not being made by Catholic Charities. Well, it's... Catholic Charities is asserted in the ninth cause of action. We're hoping to somehow to get this, to win this case. And if Kay Kine is insufficient as the plaintiff, then the Catholic Charities will step in and be an organizational plaintiff to represent the class. We're hoping somehow that there shall be a remedy for this. I mean, I'm really confused by the characterization, partly by the complaint, which when I read it, Catholic Charities is a party, and it says, for example, at paragraph 15 on A7, the Catholic Charities and Plaintiff Kine made a FOIA request. And then on A14, Catholic Charities has pending FOIA requests. It is in the business of frequently filing FOIA requests, and talks about this pattern of wanting to continue to submit future FOIA requests and will be harmed. So it's... I mean, I hear you, that you're trying to clarify and say, no, actually, we were there only as the representative of the plaintiffs. And saying that Catholic Charities makes the request, you really meant that only in the way a lawyer makes a claim for a client. That's fair in a manner of speaking. The request speaks for itself. It says, we're making a third-party request, and Kay Kine says, mail the documents to... I'm not sure how clearly it speaks for itself, given that we've had all these questions. I don't know. I think you weren't clear what third-party request meant. You've helped to clarify it for us. Thank you. That's the language in the regulations, I think. They allow a third-party... Somebody else mails the request in with a signature. On behalf of someone else. Yes. I would suggest that... There's a suggestion by the district court that even if Kay Kine can't make... She can't complain about the initial response, somebody else can. That is not logical. That does not make any sense. Who is this entity? Kay Kine is the person who's important. Right. She's being harmed under your complaint. And I think the difficulty is that, as you know, for example, when somebody litigates in district court, there may be lots of errors along the way, but we limit the ability to come on appeal after the final judgment, because a lot of the problems fall away. Which isn't to say they aren't problems. I think the exhaustion functions similarly, in that you may have problems with the initial production or lack thereof, but part of the idea about the exhaustion is that the agency gets another chance and may resolve the issues to Kay Kine's satisfaction. And then you have a separate claim, which is, wait a minute, this has become the new normal. They are, because of the chance to fix things on agency appeal, they're ignoring their initial obligations and making people go to appeal to do what they should be doing in the first place. Is that fair? There's some fairness in that. And so, but then that's a separate kind of harm that I think you're right in your brief when you say once Kay Kine, if she were to get the relief in her individual case on administrative appeal, she wouldn't have standing because she would have gotten what she needs, but that somebody that's in the position to suffer systemically might have standing. Or, I mean, I didn't see you raising capable of repetition yet evading review as a separate way of preserving her standing.  If Kay Kine had made an administrative appeal, she would have destroyed her standing to complain about the initial response. DHS agrees with me on that point. And I'm not sure, I mean, if we agree with you on that point, what would be the basis then for her to be able to come here without having exhausted? Because there must be a remedy for the bad initial response. What if, suppose the initial response had said, you asked for some documents, but some or all of them are exempt under B1, B2, B3, B6. In other words, the initial response says nothing. There must be a remedy for a bad initial response. The DHS theory, there never shall be a remedy. There must be a remedy. The initial response is very flawed. It talks about materials prepared in contemplation of litigation, attorney-client confidential communications. It talks about J2 and D5 of the Privacy Act. The Privacy Act has nothing to do with this. It's a very confusing initial response. It is flawed. There must be a remedy somehow. And what is that remedy? The remedy is the court should examine it and not say you must do an administrative appeal. Why isn't the remedy the internal appeal? There's lots of agency action where we wait for the agency to finish. I know this is funny. It's a little different. But it's not at all uncommon to say let the agency go through its own internal processes, which has two steps here, and then the courts will step in. And no one thinks that that's depriving people of a remedy for their rights. They've probably been done a lot faster than this Court. The district court and the DHS agree that as soon as you make the administrative appeal complaining about the initial response, you've now destroyed your standing to complain about it. All right. But just think of the agency response as a two-step response, like in a lot of other administrative law matters where agencies have two initial and an appeal or initial and reconsideration before you go to court. I don't understand why what's so wrong with the agency first correcting its own errors. Why is that not a remedy?  No, in reality, why is that not a remedy? Well, because we've been here many times. No, Kay Cline has not been here many times. This is her only time. That's true. How can she complain if she files the administrative appeal? She can complain internally. Why is that not? As soon as you go for the NLRB, you go for an ALJ, and then you complain internally. It's logical to me in many ways, except the district court said if you do it, you kill yourself. No, no. Go ahead. I'm sorry. That's what the court said. No, but only with respect to whether you have some freestanding complaint about the way the system is structured is that the first date, it's literally labeled a draft response. And then in order to get the draft finalized into a final response, you've got to go further within the agency. I mean, somebody could say, look, we'll never get a determination of whether the draft response does what a draft response is supposed to do unless we seek review right away. But then the answer to that would be, well, that's because the draft response isn't anything that you get relief based on anyway. You have to follow the agency process all the way through to get the final response, and then you get to complain about the final response. Why wouldn't that be the same thing here, that the initial determination, it's just not something that is the subject of a complaint because you still have a remedy available to you within the agency. And then once the agency decides that it's not going to turn over the documents, that's what you bring before a court. But it's missing the harm. I mean, I go ahead. You answer. Well, there's logic to what you say, Your Honor, except the district court and DHS say as soon as you do that administrative appeal, then you no longer can complain about the initial response. You're shifting to the documents themselves. So we want to complain about the initial response. It is deeply flawed. They don't even defend it. It's full of bad things, false and misleading statements. And we cannot let that be un-remedied. There must be a remedy for it. Can they say anything they want? Can you explain to us why the internal appeal is not an adequate remedy? Because the district court said that it wasn't, is the shortest answer. No, no. I'm asking you why, speaking for Ms. Kine, taking that internal administrative appeal could not have been a remedy for the missteps by the lower-level folks. Because to have done so would have destroyed her standing to complain about it. But no, it would have destroyed her standing in court. I'm asking why. You said it's not a remedy. I'm focusing on remedy, not standing. Why couldn't an internal administrative appeal be a remedy, get her the documents she wants, or at least some more of them? Well, I guess it could be. It often is, in fact. But we want the documents, but we want something else first. We want them to stop you sending out this boilerplate-laden, misleading statement that they've been doing for years. But that's not Ms. Kine's view. She's only filed one, and she's never going to file another one again, you've said. So she has no interest in an ongoing practice. She has an interest in this case. And she could be remedied by taking an internal appeal, and then if she still wanted to, coming to court. And that whole process would have been faster than I think what's happening here with district court and this court. Well, I can't think of anything new to say, except she wants to complain about the initial response. But as soon as she does, she can't complain about it anymore. Why does she want to? Maybe I'm not asking it clearly. Maybe it's my fault. Why does she want to complain to a court rather than complaining to higher-ups within the agency? She'll complain to anybody who will listen. But she didn't complain within the agency, to higher-ups within the agency. That's true, Your Honor. Because as soon as she did, then she's cut off her legs. No, she hasn't, because she can still get the documents, which is what she ultimately wants. As all she wants. She does want the documents, but she also wants to stop this initial response. In theory, they should send a new initial response that says, by the way, we have the document that you're asking for. How about that, for starters? Is that so difficult to do? And then, why is it that you can segregate nothing out of it? Four other district courts have said you can segregate things out of the assessment. How come you can't? They should tell her that. But some district courts have also said the entire thing is exempt. So I don't know. You'd be in a different position if the law was settled, but it's not. Oh, I think it's settled, Your Honor. There are district courts in this very courthouse who have said that these assessments are 100 percent exempt. Decided in 2013 and 2014? It doesn't matter. It's not a settled question. Very well, Your Honor. Okay. Kaye kind of deserves to be told if they have the assessment or not and what are the real reasons why they can't desegregate. And then she could do an administrative appeal based on the real reasons, and perhaps she'd have success then. Right now, what is she supposed to say to the administrative appeal? Give me documents that you don't – I don't even know if we have them or not. Give me – you're not giving me – you're holding secret documents, and I'm supposed to appeal? Right, but you have that same problem in court. So – Well, in court, Jill Eggleston is the person – she knows what's going on. She tells the court the real reason the assessment is exempt is a deliberative process privilege. She said that earlier to the Angorimate Court and to the Viola Court. But what does she tell Kaye kind? Mumbo-jumbo, blah, blah, blah, several paragraphs. They know the real reason, but they don't tell Kaye kind. Why is that? If I'm understanding you correctly, there are two different harms that this client is trying to raise. One is I didn't get my documents. And two is I'm entitled to them not after an administrative appeal, but I'm entitled to them in response to my initial request. And that what you're complaining about is that the agency has reverted to or has defaulted to a process wherein the initial request has been made meaningless and everybody who wants something, even though the statute contemplates that they would get it on the initial request, the agency has effectively, because of the exhaustion requirement, sent out meaningless boilerplates in the first instance and only started to do the work when people bring in administrative appeals. So on the one hand, Kaye kind wants her documents. On the other hand, Kaye kind and or cafeterias together want to put pressure on the agency to take seriously its production requirement in the first instance. Is that right? That's fair, Your Honor. It gives effect to the word immediately. The statute does not say give the stuff to the people after they file complaints in federal court. It says immediately. Now, if that's the case, I think this is why we have so many questions about whether cafeterias is a party in its own right, because we do have standing and or exhaustion issues with respect to the individual claim as opposed to the potential pattern or practice claim. I see the first claim about I want my documents as an individual claim. The second claim potentially as a pattern or practice claim. You not only did this this time agency, it has become your new normal. We cafeterias see this all the time. That's why we're so frustrated. And she would. I mean, when you say she would lose her standing if she did administrative appeal, you're basically acknowledging that she might get the individual document relief, right? Which is a way of saying there's a real purpose in this agency for the administrative exhaustion, because they actually do wake up and provide things. So it's hard for us to say, oh, but she didn't need to do that because we're going to get to the systemic issue, right? That's, I don't think that's what our law permits in a case like this. It seems to me that the court is, is forgetting about Kay Kines, her complaint about the initial response and leaping ahead to pattern and practice claims by other parties. Does Catholic charities have more rights than Kay Kine does? It has different rights because it's a repeat actor and she's not. She, just like the plaintiff in Lyons who had an encounter with police doesn't have standing to complain unless he can say, and I'm going to have future encounters. So I'm in a position to ask them not only to compensate me, but to clean up their process. So to hear, she just isn't in a position maybe to ask for that unless it's part of a pattern. But that would, you know, that would suggest that Kay Kine can't do anything. She can't complain, but somebody else can about that. That's very illogical to me. Suppose, suppose that Catholic charities did bring a policy or practice claim, then wouldn't that get some resolution on the question of whether the initial determination that's provided by the agency is enough. Well, in other words, why wouldn't it? Because the claim would be you have a policy or practice of just not giving FOIA requesters what they're supposed to get when they make a request and you give your initial determination. Your initial determination is vacuous. It doesn't comply with statute. And then wouldn't that get errored? And wouldn't that remedy Kay Kine? Kay, you, you, to make, the Catholic church has to be requesting a document. What, what would they be requesting? They have to request something. Um, and then if, if Catholic charities is treated badly, it can make a complaint, but we need, we need someone to start off with. We need the person. It could be both. We're sort of asking about this case or the next case like this, because as you've alleged, you're, you do this a lot. So it could have been in this complaint and perhaps it could be in the next complaint that there are these tandem, you know, one is a more localized document related remedy that's being sought. And the other is a more systemic clean up your act, pull up your socks remedy. And those two are sort of natural allies. I mean, another question I have is why, if Kay Kine is going to be the plaintiff to try to get at that, um, process problem that the complaint identifies. Another way we sometimes see is somebody asserts, this is a problem capable of repetition yet evading review because it's fixed so quickly. We can't, and I'm not sure that would be, I mean, I can ask the government, but I'm not sure that that would work here because once the exhaustion takes place, it's not even presented to us. But. Well, Kay Kine is a plaintiff. She has eight causes of action. She wants relief. So every, every policy or practice claim under FOIA arises out of a request, right? Every single one, because otherwise you wouldn't have a case to begin with, but we do have policy or practice claims under FOIA. Obviously, we do pain and that we have an entire jurisprudence that's devoted to policy or practice claims under FOIA. So every single one of them has at its root, a request. And then the person who's making the request can also say, and by the way, this, I request things. There's a danger that I'm going to request something in the future. And the same injury is going to attend me again. And therefore I'm bringing a policy or practice claim too. And so it seems like Catholic Charities is in a position to be able to do that. And I had initially read the case actually to present that, but you're obviously going to defer to you, but why wouldn't that be enough? Well, in the pain case, pain enterprises made requests for itself. It wants stuff, no third party, no nothing. It wants requests. And then it got some relief. And then also wanted to do a practice and policy, because it would make more requests in the future, it itself. But here we don't, nobody, Catholic Charities has not applied for asylum. We want asylum officer assessments. You can make a FOIA request for documents, whether or not you're, it doesn't matter what your motive is. You don't have to be interested in applying for asylum to ask for these documents. Well, FOIA documents are available to anybody. If it's available, it's available to anybody in public. It doesn't matter what your reason. If Catholic Charities said, give us the assessments of strange people, the DHS would say, well, they agree with privacy. Well, no, you can have exactly the type of waiver you did here. Right, you do exactly. That's why I had initially read it to do exactly that, because you're in the business of helping people with asylum. And by being in that business, you have a stake in this enterprise. Well, there's some truth to that. And you're suggesting that Catholic Charities has standing to do things. Okay, maybe. But what about Kay Kine? What about her? She or her rights are not being fairly treated here. How do we challenge this initial response? We tried all these different ways, and there must be a remedy. I hope you will agree with me, the initial response is deeply flawed. Well, let me ask you a question about that, and then we'll definitely preserve some time for rebuttal from you. But on the initial response, suppose that there is a generally accepted principle that an initial response doesn't need to take the form of a Vaughan Index. Okay, let's just suppose that's true. And you may disagree with that, but I'm just asking you to assume that's true. And a Vaughan Index only comes into play at the time of a lawsuit. And so for purposes of the initial response by the agency, the agency is not required in response to every FOIA request to produce the equivalent of a Vaughan Index. But you think what was produced, what was given to you in initial determination here wasn't enough. So what you want is something north of what was given here, but south of a Vaughan Index. What is that? What more would you want that doesn't get to the territory of a Vaughan Index? We ask for a specific document. They should tell us if they have it or if they don't. The Vaughan Index rule can be... So identifying what they're withholding. Just identifying the documents they're withholding is what you want. Yeah. They've already counted them, the three pages and the eight pages. They know what they are. And then if they identify the document that they're withholding, would they also need to identify the reasons that they're withholding that document? I admit there's case law that says when somebody makes a broad request for hundreds of documents, there's no duty for a Vaughan Index. I admit that. However, this is a different case. We have a very narrow thing. We're asking for... We need the documents. One, two, three. In that case, the Vaughan Index law does not apply. Instead, the statute applies. The Vaughan Index came from courts. We should apply the statute. If somebody says, I want the assessment, you should say we have it or we don't. It's very easy to do. Maybe if there's thousands of documents, then that's harder for the agency. But there's no burden whatsoever. When the request is tailored to a specific document, your argument is tethered to that? Indeed. That's what makes this case different from all the Vaughan cases. Okay. I think the statute is very easy to comply with. And why don't they comply? Maybe that's a good moment to hear from... Yeah. We'll give you some time for rebuttal. Please, the court. I'm Matthew Glover, and I represent the government. I think the questions this morning have elucidated that there was a little bit of confusion, but I would push back on my friend's contention that we needed to respond with more than was here. This was a sufficient response under the CRU standard, and they didn't just request this. This says that you need to identify the scope of the documents that you plan to withhold. Why doesn't that language nationally mean you need to at least say some loose description, assuming that itself is not exempt, some loose description that says we are withholding the assessment and, if there were something else, and, you know, these internal e-mails. And then you just give a... And our withholdings are under... And you just list whatever exemptions are applying to whichever document. You don't have to match them up with the documents. But what you do have to do is say, this is the document we're withholding, so that when they take an internal appeal, they can go, you can't withhold assessments. And they can make their argument, based on a lot of district court precedent here, but not 100%, that those can't be withheld. Why isn't that a meaningful administrative appeal? So, Your Honor, a couple of points to that. As to the meaningfulness of the administrative appeal, in some of the cases where the assessment has been segregated in part in the appeal, they've received similar responses. They've filed an administrative appeal saying, I asked for my A file, which is more than just three documents, and I asked for the assessment. I want to know why you're withholding the assessment and isn't any part of it segregated. So they're able to make those same requests in response here. There may be other things you're withholding, and they don't know what they are. How can someone, let's just assume a case where they've asked for X category of information. It's a small category of information. And the government says, we're withholding 200 pages of documents, plural. And they have no idea what those documents are. How are they going to appeal? I'm sorry. No, I apologize for interrupting. I would have two responses to that. First, as to the statement that they're withholding pages. This court, and no court to my knowledge, has required FOIA to use magic words like we're withholding so many documents, as compared to so many pages. And you see this. There was a case the court decided a couple weeks ago from the Institute for Justice, which was about this AFTRAC database. The Institute for Justice, and it's in the district court puttings there, often requests these databases. The initial responses they get are often termed in terms of, I think, megabytes or gigabytes. I'm not that tech savvy. Data. This is the amount of data that's responsive, and this is the amount we're withholding. So this court and no court has ever required you to define it in terms of documents. And if I could give an example, think about a request for the A file. And you say, okay, your A file has 25 documents. We're producing 24 and withholding one. Suppose the 24 documents that were produced were one page each. You might think the 25th was, so you think you've got 96% of the request. But if the 25th document is actually 50 pages or 25 pages, then you've only gotten 48% of your file. And so we're giving you a sense of what percentage of your file you're getting. Right. No, I get the point that the pages give information. But the question is, why not give more information, i.e., what's the document that's encompassed by the pages that are being withheld? So, Your Honor, it's important to remember that we're at the initial determination stage. And in CRU, it did say define this, review the documents, which they've done, define the scope of what you're producing and the scope of what you're withholding. The court didn't say that scope needs to be in terms of listed documents. Well, that's where my question started, is why isn't that the natural meaning for scope in this context, where someone's going to be taking an internal appeal to go the scope. If you want to tell them how many pages have added, I don't care. But what you need to do is just identify in some way what the documents are that are being withheld so they can actually argue about applicability of exemptions. What's hard about that? You know, in request, if you flipped this request and they were producing eight pages and withholding, I think it's 849 pages in full, and suppose those were each one-page documents, that requires significant work. The statute's initial determination. It's typing. It's typing. Withholding, maybe even group, withholding internal email communications. Again, I'm aware of 50 pages, we're withholding your assessment. 20 pages, we're withholding. And you don't have to match things up like a Vaughan index, but you need to just identify what documents you have. So I'm aware of no court that has required such identification until the district court Are you aware of a court that has said you don't have to do that? I know that in this circuit, similar responses to this, district courts have found sufficient and there have been administrative appeals. Are you aware of a circuit precedent that says you don't have to do that? I think that the district court in Biola, which was obviously reversed on other grounds because the initial determination was no longer at issue in that case, said that. And so that wouldn't be So the answer is there's not. So saying that you're not aware of a court requiring it is really just faking the very question that we have in front of us today. Yeah. I'm aware of district courts at least making the statement, in this court making the statement that you're not required to have a Vaughan index. And as Judge Srinivasan discussed with my friend, you know, there's something between a Vaughan index and a statement regarding pages. And I take it to be that's where you're getting. I'm not aware of any court delineating that one. A statement of recording documents. Sorry? No, I apologize. I just didn't hear. A statement of recording documents, reporting documents. So in other words, a Vaughan index, it tells you what's being withheld and then it tells you which exemption is applying to that withholding. But if you only listed the documents that are being withheld, either by document document or by category or something like that, and then didn't have to tie a particular exemption to the document itself or the category of documents, then that does seem like something that's between what's done here and what a Vaughan index would do. And the question is, why not do that? And what – why functionally does the government not do that? Is it purely because of the work that it would take? Which is not to say that's a bad answer. It's just to ask, is that what's going on? So I think that's certainly part of the answer. And, again, this request is a little bit easier to talk about because there's only eight pages withheld in full. But in the request in which many, many documents are withheld in full, it is an additional burden on the agency. But I would also say, and this comes up in some of the district court cases dealing with assessments, but in other district court cases, administrative appeals are often taken asking that as the first question. What are the documents you're withholding? I want these specific ones. And what happens when they ask that question? Does the administrative appeal, does it give – they get an answer? As I sat at counsel table, I was trying to remember the case. I was going through a lot of joint appendices from district court cases last night. And there was one in which they asked, you know, what are the documents you're withholding in full? And I believe it was one of the FBI cases.  So the resumes and applications of people who applied for jobs and didn't receive them. And then they also, you know, said, you've received the following documents withheld in part, and, you know, we had our redactions on those. So I identified at least that case where they said they withheld it in full. So then the question is, if that can be done, then why – if that can be done through the auspices of an administrative appeal, why isn't that just folded into an initial determination? Again, I think the burden on the agency, and the agency is trying to answer as quickly and cleanly as it possibly can, and it wants to further engage. Suppose – Well, hang on. The administrative appeal is on the same timeframe, same 20-day timeframe. So if it can be done in that 20-day period, then it can be done in the first 20-day period. Yes, but – I get that it's more work. Anything is more work than doing less. But the question is whether it's unworkable. So the – but the administrative appeal only concerns the documents they're contesting, or if they have a policy or practice that pertains to the documents that were produced, I guess in cases of delay or something, it might pertain to that. But the administrative appeal will already have narrowed because it wasn't – No, but we were already talking about that the only time – the only effort that you were talking about was the time it would take to type up some list, and it could be a grouping, it could be just reversing categories, or it could be a label for a document. And so – and that's going to be the exact same list, whether it's done at the administrative appeal – they're going to type the same list of what didn't go out at the administrative appeal stage as at the initial stage. Yes, but at the administrative appeal stage in that same time period, they're not reviewing the 400 – or, however, in a given – in a given request, they're not reviewing the documents that went out in full or the documents that the party got maybe in part and chose not to administratively appeal. So the documents they would need to review in the administrative appeal is going to be narrowed, except in the cases where the agency says everything's exempt and or, you know, we don't find anything in relation to your search. So one thing I'm not quite understanding about the government's approach to this case is the following, that if the purpose of an administrative appeal – suppose the sole purpose of an administrative appeal is just to make sure that someone else within an agency, presumably at a higher rank, has a chance to review the request and the response, and the initial response. Then it really – you wouldn't need to supply any information with an initial determination because all that would have to happen is that the requester would just check a box that says, you know, I'd like someone else to look at this, and the requester doesn't have any idea of what's being held, why it's being withheld. But all the purpose is still being served because the purpose is to have somebody else take a second look. If that's true, then the content of the initial determination sort of doesn't matter because it's just we want a second layer. And a lot of the government's position in this case and elsewhere is matched to that kind of description because it's things like it allows to correct our initial response. Well, that can happen as long as it's there. Then part of the government's response also is it would allow the requester to get more information so that they can make arguments in the administrative appeal. Now with that, which seems different to me, it's hard to know what they're supposed to do with the information that you gave them, for example, in this case because they don't even know what's being withheld. If they don't know what's being withheld, I'm not sure and they don't even know which specific, you give a group of exemptions. You could give all of them, really. You could just say 1 through 9 as opposed to 1 through 3, but you give them 3. And I don't even know what they're supposed to do with that because they don't have information with which to make targeted arguments in an administrative appeal. Again, that would still be okay if the purpose of it is just to get a second layer of review. But once it's designed in part to arm the requester with information with which to tailor its arguments in an administrative appeal, it becomes a little more difficult to understand how that purpose is being served by a response along the lines of the one that we have here. So I want to answer that, but I see that I'm over time. That's all right. If I could start by adding the additional purposes to narrow should it lead to litigation, sort of the disputes between the parties. So accepting the two purposes you've outlined, I would say that's an additional purpose. I think CREW is talking about what the statute requires in terms of the scope of the initial determination. And so a determination that just had a checked box would not meet CREW because it wouldn't tell you. I guess if the box it was checking next to said we've reviewed all the documents, you would still need to give some sense of what is the scope of those documents. Would it, in your view, just following up on that, and I know you have more to say and we'll give you time to answer, but would it be enough under that if you had a form in the agency that said number of pages withheld and a blank and then which exemptions claimed and had each of them listed and all the person had to do was put in nine in the number of pages and then check one, two, three or whatever the exemptions were and leave others blank. And then it would go to a reviewer. Would that, in your view, satisfy CREW and the statute? I think that it could. Certainly, again, that would be the agency trying to be efficient in responding to the volume of requests. I would think you would need the number of pages. You would need at least, you know, the number of pages or megabytes if we're talking about data. Again, maybe data can be put in pages. I'm a Luddite. You need that sort of this is the scope of the overall request. This is the scope of our compliance. This is the scope of our withholding, I think, in part and in full. And then you could have, you know, these are the exemptions we apply. To Judge Srinivasan's point about they could say they apply one through nine, that would be problematic here. Part of what they said in the initial determination in CREW is we're going to produce documents and they're not required to produce with the initial determination, but we're going to produce them. And as we do, we'll claim exemptions. If we had cited one through nine here, you know, number nine is about geotechnical information and I think maps and locations of oil wells and minerals. You wouldn't expect to find that in an A file. You know, the exemptions that were listed here dealing with law enforcement and matters like that, the A file has certain FBI background that's done when you apply for asylum or when you seek other, you know, visa relief. So there's going to be law enforcement background check information in there. There's going to be pre-decisional information. So, you know, in terms of the form. So your answer so far is yes, it would be fine. If it was accurate with respect to which, if somebody had actually looked at the documents and made thoughtful determinations, it's only five that we're applying here, that that kind of form actually would, in your view, satisfy CREW and the statute. Yes, but if I could step back or perhaps narrow, it's important to remember in this case, the initial determination was not just the, I think it's a three-page letter in the appendix, but it was also the production because they were provided in tandem. But nobody thinks you had to do that. I mean, you're not saying that, right? No, but I am stating that when it. I think what we're talking about is the universe of withheld and what explanation has to be. Yes, withheld in full. With respect to what's withheld. Yes, but I guess I would just point out that here, when you're looking at the initial determination in this case and whether it meets CREW, I understand we're talking about sort of what would apply across the board. I just wanted to reiterate that here you would look at both the letter and then the production, which included 849 pages in full, but it included 11 pages in part. And those pages that were provided in part, in accordance with the DHS's FOIA regulations, what they do is they print the pages that appears. They put a box, and there's some sort of tech that blocks it out, around that. I think here it was green. In some cases I've seen it be a white box with a black outline. And then they state the exemptions next to it for each. Right, but that's the production. I mean, if the case is about the sufficiency of the initial determination, I mean, because this could have happened. You give the initial determination, boom, a lawsuit's filed. And at that point, the production's irrelevant if the claim is about the sufficiency of the initial determination. And so if you disaggregate the two, then the question becomes, is what you supplied in that three-page document enough? True, but I guess I'm just trying to reiterate, for your purposes you don't need to disaggregate them because they were supplied together. But there were some documents that were withheld in full. Yes, yes. So, I mean, I take your point that there are indicia here that the agency is not just blowing off its initial obligations. I take that. And that, in fact, much was produced, things were found, they were examined, and some information was communicated about which exemptions apply. And I do, I mean, we do appreciate that. We see agencies who, you know, don't necessarily meet that standard, and we don't mean to disparage the fact that much was done. And so the question before us then becomes, with respect to the things that were withheld, what is the obligation of the statute under CRU in terms of identifying? When you read CRU, it says you just need to gather and review the documents, determine and communicate the scope of the documents that you intend to produce and withhold, and the reasons. And so the question that we're probing is, how minimally do we read that? Or is there anything that's sort of short of a bond index but that's more fulsome, which is what Mr. Cleveland is asking for? Is there anything more that might be required? And I take your position to be, if it's done in good faith and if it's accurate, that actually a form that says X number of pages and accurately says, and these are the exemptions, and accurately discloses or prepares to disclose things that aren't exempt would be enough. Yes, I believe so, with the caveat that, again, we have the full production here. And your question about the form, I think, goes to the question Judge Millett had for me about what does scope mean in CRU. And, again, we haven't, the district courts here have often found responses like this to be sufficient under CRU to require exhaustion. The district court did in this case. There have been other exhaustion cases. And so, you know, as to what the form might look like, you do need to tailor it to that response. You know. Can I ask you this question? Your brief says the following at the bottom of page 35. Such an appeal, meaning an administrative appeal, would have allowed DHS to further explain its withholdings. And it would, but how would it have allowed DHS to further explain its withholdings in a way that it couldn't have done so already? Like, that's what I'm not understanding is it may still be enough, but in terms of functionally what's allowed by the determination that was made, it's true that an appeal would allow the agency to further explain its withholdings. But the claim that's being asserted on the other side is, but you also could have explained the withholdings more in the initial determination. You didn't need an administrative appeal to be able to do that. That's fair. But, again, 552A6, Romanet 1, simply says you need to notify them of the determination and the reasons therefore. And this court interpreted that word determination to include the scope of what's withheld and the scope of what's provided. Whether you could do more at the initial determination stage or not isn't the issue. It's whether you've met the crew's... I don't think we're fighting about whether. Or I think we're fighting about what scope means. So it's not that we're trying to add more to crew. We're now addressing something that wasn't addressed, didn't need to be addressed there, because it's just a different problem. And what is scope? So the agency takes its first cut. And then there's an administrative appeal. And as for the documents that the agency decided to withhold, and let's just assume in full. Let's assume you don't have any partial ones just for my hypothetical. So there's 10 released, 5 withheld. And here's a list of exemptions that we thought applied in some sort of way. Something in there applied to each of the documents maybe more than one. For the appeal, when the agency hands up its documents to the appellate people, do they give them a list of the stuff that was withheld? Or do they just hand them a big old pile of stuff and a list of exemptions, none matching with anything else? I don't have any experience with the administrative appeal process. Somebody knows, I would love to have the answer to that. I'm still getting used to being up here. A lot of time spent over there. And in the back. So the agency in this case, I guess, and we described in our brief how it's the National Records Office that does the appeal for DHS. So I'm going to answer your question just as to DHS. For example. The FOIA request is made. The files are pulled. It's in one system. And the appeals office, I think it's the National Records Office, but I apologize. The names are correct in our brief. It has access to the whole request, including all pages and files that were withheld in full. All that were produced. All that were, I guess in your hypo, they were only withheld in full. So they see that. They're not given a separate index saying this is what was or wasn't withheld. They merely are told this request, which is in the system with the documents that are responsive, is being appealed. And they would receive the appeal, you know, the request from the plaintiff. In the system. The computer system? Yes. The computer system. And the documents aren't named in the computer system? Documents don't have names? I mean, presumably they're copies of the documents. So you could look at the documents and see what they are, I assume. Yes. Counsel is informing me there's nothing in the system that names each document. They have to click into the production and look and see what the document is. So there isn't an index. I don't know if I said that before I meant to. There isn't an index. I just didn't know if it was like a bunch of PDFs and someone had to label each PDF. No. And I know I'm well over time. If I could just make a very quick point in response to something opposing counsel said. He said the Privacy Act isn't implicated here. And actually the use of the Privacy Act exemplifies how DHS sought to go above and beyond here. When they were interpreting this as a request by Ms. Kine for her own documents, the Privacy Act 552A subsection B2 says nothing can be withheld under the Privacy Act if it would be available under section USC 552. So it can't be withheld under the Privacy Act if it could be withheld under FOIA. But in certain instances, the Privacy Act gives the requester a right to information about themselves. And so by applying Privacy Act exemptions, all the agency was doing was saying, if we're going to withhold anything, we need to both know that it has a Privacy Act and a FOIA exemption. It would have to have a FOIA exemption under the Privacy Act. But if it has a FOIA exemption and no Privacy Act exemption, the Privacy Act might require us to provide it to her because the Privacy Act can require disclosure of your own documents in instances FOIA would not. Again, I apologize. I know I'm well over time. Okay. Thank you, counsel. We'll give you your two minutes for rebuttal. I would suggest that the statute is the primary concern here. CRU did not deal directly with the statute. The statute says immediately give the requester the reasons. And CRU was talking about other stuff. It was a very broad request. In the context of a broad request, no bond index is required. But let's look at the statute directly. CRU did not do that directly. But I'm asking you to do this. Immediately is a word we have to give it a meaning to. They know the answer. They counted out the eight pages. They know what the answer is. Why can't they say? And they counted out three pages. Why can't they say what they are? I believe the question was, why don't you? And then I'm not sure what the answer was, but he's talking about megabytes of data and stuff. Well, in this case, it's simple. They know they're holding it in their hands. Well, maybe in this case, but there's nothing in the text of FOIA that would allow one definition of determination for what you deputize a small request and maybe a different one for medium and then a different answer for a large and then maybe another difference for gargantuan requests, which they do get sometimes. That's true, Your Honor. So then we have to have a definition of determination that applies to the 500,000-page responses as well as the five-page responses, don't we? Well, not for the purposes of this case, as we don't. Well, we don't write opinions for a case. You're asking us to interpret the law, and that's what we do in a way that applies to all cases. Well, yes, Your Honor. But I would suggest in deciding this case, she made a small request, and it's easy for the agency to comply. Do you think FOIA applies differently to her than to everybody else? When you make a small request, it's different than if you make a large one. Do you think the text of FOIA applies differently to her than to everybody else? The text applies to – no, it's the same. The request itself is what is important. I would suggest that there's no reason why the agency cannot respond to the – do what the statute says. It seems to me it's very easy for them to do that, and they have not given a good reason not to. Thank you. Thank you, counsel. Thank you, counsel. The case is submitted.
judges: Srinivasan, Millett, Pillard